FILED

2011 Mar-18  AM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| DONNA SWACKHAMER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.:  3:10-CV-1091-VEH** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER, | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| **Defendant.** | ) |

---

## <u>MEMORANDUM OPINION</u>

Plaintiff Donna Swackhamer ("Ms. Swackhamer") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act (the "Act").  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]  Ms. Swackhamer timely pursued and exhausted her administrative remedies available

---

[1]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI under the Act.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g),

§ 205(g) of the Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Swackhamer was a 44-year-old female at the time of her first hearing

before the administrative law judge (the "ALJ") held on November 20, 2008.  (Tr.

840, 844).  Ms. Swackhamer completed the eleventh grade and obtained her GED.

(Tr. 843).  She later attended the North Alabama Skill Center, studied retail sales, and

received a certificate.  (Tr. 844).  Her prior work experience includes employment as

a nurse's aide, fast food manager, retail store manager, and office helper.  (Tr. 842-

43).

Ms. Swackhamer  protectively applied for DIB and SSI on August 18, 2006.

(Tr. 524, 546, 833).  In her disability application, Ms. Swackhamer maintains that she

became disabled on March 12, 2005, due primarily from generalized anxiety disorder

and secondarily anemia.  (Tr. 511, 546, 524, 833).  Both claims were denied initially

on October 17, 2006.  (Tr. 524, 833).

Ms. Swackhamer timely filed a request for a hearing that was received by the

Social Security Administration on December 15, 2006.  (Tr. 531, 511).  The initial

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C.
§ 405(g) fully applicable to claims for SSI.

hearing was held on November 20, 2008, and a supplemental one followed on June 10, 2009.  (Tr. 840, 851).

On July 1, 2009, the ALJ concluded Ms. Swackhamer was not disabled as defined by the Act and denied her DIB and SSI applications.  (Tr. 511-19).  Ms. Swackhamer then submitted a request for review of the ALJ's decision on July 22, 2009.  (Tr. 506-07).  On February 26, 2010, the Appeals Council denied review, which resulted in the ALJ's disability determination that was adverse to Ms. Swackhamer becoming the final decision of the Commissioner.  (Tr. 503).

On April 27, 2010, Ms. Swackhamer initiated her appeal with this court asking for a review of the ALJ's decision.  (Doc. 1).  On December 20, 2010, Ms. Swackhamer filed a brief (Doc. 13) in support of her appeal, and on January 25, 2011, the Commissioner followed with his responsive brief.  (Doc. 10).  No reply brief was filed.  This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Act and the Regulations

promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)     whether the claimant can perform her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[3]  The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 10, 2011.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir.

1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).   "Once

the claimant has satisfied steps one and two, she will automatically be found disabled

if she suffers from a listed impairment.   If the claimant does not have a listed

impairment but cannot perform her work, the burden shifts to the Secretary to show

that the claimant can perform some other job."   *Pope*, 998 F.2d at 477; *accord*, *Foote*

*v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).   The Commissioner must further

show that such work exists in the national economy in significant numbers.   *Foote*,

67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Swackhamer had not engaged in substantial gainful

activity since the alleged onset date of her disability, *i.e.*, March 12, 2005.   (Tr. 513

¶ 2).   Thus, the claimant satisfied step one of the five-step test.   20 C.F.R. §

404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following

severe impairments: fibromyalgia, deQuervain's syndrome of the right wrist, a major

depressive disorder, and a generalized anxiety disorder."   (Tr. 514 ¶ 3 (citations

omitted)).   The ALJ further determined that Ms. Swackhamer has the following non-

severe   impairments:   "hypothyroidism,   headaches,   peripheral   edema,   and

gastroesophageal reflux disease (GERD)[.]" (Tr. 514).   Accordingly, the ALJ concluded that Ms. Swackhamer satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Swackhamer did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 514 ¶ 4).  Ms. Swackhamer does not challenge this determination on appeal.

The ALJ then evaluated Ms. Swackhamer's RFC at step four, and the claimant was found to have:

> [T]he residual functional capacity to perform work activity involving casual contact with co-workers and casual contact with the public which includes simple tasks and simple instructions at the light exertional level as defined in 20 CFR 404.1567(b) and 416.967(b) with no climbing of ladders and no exposure to temperature extremes.  In addition, she should not work in activities which require driving, working around moving machinery, or working in areas with open heights.

(Tr. 514 ¶ 5).[4]  Further, the ALJ accepted the testimony of the vocational expert that

---

[4]  The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of

at this RFC-reduced light level, the claimant was unable to perform her past relevant employment as a nurse's aide, fast food assistant manager, retail store manager, and office helper.  (Tr. 517; Tr. 517 ¶ 6).

Because of the ALJ's finding that Ms. Swackhamer was unable to perform any past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 518).  Using the Medical-Vocational Guidelines as a framework and once again relying upon  testimony from the vocational expert, the ALJ determined that Ms. Swackhamer was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 518).  Examples of such possible light jobs included employment as a parts inspector, an assembler, and a sorter.  (*Id.*).  Accordingly, the ALJ concluded Ms. Swackhamer was not disabled as defined by the Act, and denied her DIB and SSI claims.  (Tr. 519; Tr. 519 ¶ 11).

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that his findings of fact must be reviewed with deference.  *See Martin v. Sullivan*, 894 F.2d

---

these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through March 10, 2011).

1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]

In this appeal, Ms. Swackhamer primarily contends that "[t]he Commissioner's decision should be reversed because the ALJ failed to properly articulate good cause for according less weight to the opinion of the Plaintiff's treating physician when finding that the Plaintiff was not disabled." (Doc. 13 at 6). The court turns to this issue first and agrees with Ms. Swackhamer that, under the circumstances of her case,

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

the ALJ committed reversible error.[6]

## I. IN THE ABSENCE OF ANY DISCUSSION BY THE ALJ ABOUT THE MENTAL ASSESSMENT OF MS. SWACKHAMER MADE BY HER TREATING PHYSICIAN, THE ALJ'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.[7]

An ALJ may not arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982). The opinion of a treating physician as to the plaintiff's condition and the medical consequences thereof is entitled to deference, absent good cause. *See* 20 C.F.R. §§ 404.1527 & 416.927 (1998); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The law of this circuit is clear that <u>the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary</u>.") (emphasis added) (citations omitted).

Good cause exists where the treating physician's opinion is not bolstered by the evidence or where the evidence supports a contrary finding. *Id.* However, the ALJ's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

---

[6] As a result, the court does not reach the merits of Ms. Swackhamer's Eleventh Circuit Pain Standard argument or any other issues presented on appeal.

[7] Some of the analysis in this case persuasively flows from *Heindl v. Astrue*, No. 1:06-CV-4747-VEH, (Doc. 8) (N.D. Ala. July 26, 2007).

Furthermore, where the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true and be given substantial or considerable weight. *MacGregor*, 786F.2d at 1053.

Here, one of Ms. Swackhamer's treating doctors provided a mental medical source statement[8] on November 13, 2008, in support of her disability claim. (Tr. 774-76). This particular evaluation reflects that Ms. Swackhamer is markedly and extremely impaired in many areas of mental functioning. (Tr. 774-76; *see also* Doc. 13 at 7 (summarizing results of report)).

The ALJ is not explicit in discrediting this mental assessment favorable to Ms. Swackhamer's disability claim. In fact, the ALJ does not even mention the existence of this mental medical source statement in his decision. Instead, the ALJ ambiguously states:

> Although the claimant's nurse practitioner opined she was unable to be gainfully employed due to lack of concentration, inability to communicate to other people, and the side effects of her medications, little weight is given to this opinion as it is inconsistent with the treatment which was provided by Dr. Mitchell. In fact, in August 2008, Dr. Mitchell stated the claimant was stable overall and indicated only a routine follow-up in three or four months (Exhibit B12F).

---

[8] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

(Tr. 517).

The nurse practitioner's opinion referenced by the ALJ is signed by Pam Hill, CRNP ("Ms. Hill"), and is a separate document from the mental medical source statement discussed by the court above.   (*Compare* Tr. 773 *with* Tr. 774-76). Additionally, Dr. Lyman Mitchell's ("Dr. Mitchell") notes from August 2008 do not discuss anything about Ms. Swackhamer's <u>mental condition</u>.  Furthermore, even if Dr. Mitchell's indication that Ms. Swackhamer was stable overall in August 2008 (Tr. 780) implicitly includes her mental state, such opinion predates the November 2008 medical source statement.

While the name of the person who signed the medical source statement is not legible (*see* Tr. 776 ("Signature of Physician or Psychologist" section)), for the purposes of Ms. Swackhamer's appeal, this fact is of no consequence because the ALJ stated during the initial hearing that he was going "to assume . . . that is Dr. Mitchell's signature on there."  (Tr. 848; *see also* Doc. 14 ("Plaintiff correctly states that the ALJ did not specifically mention <u>Dr. Mitchell's assessment of her mental limitations</u>.") (emphasis added)).   Moreover, the ALJ never mentioned this assumption in his decision, much less explained why he would no longer be guided by it in making his disability determination.

Finally, while the Commissioner observes that an "ALJ is not required to

discuss every item of evidence in the record" (Doc. 14 at 10), he offers no controlling authority in which this general principle has trumped the Eleventh Circuit's longstanding treating physician's rule as articulated in *Lewis*. *See id.*, 125 F.3d at 1440 ("The ALJ <u>must</u> clearly articulate the reasons for giving less weight to the opinion of a treating physician, and <u>the failure to do so is reversible error</u>.") (emphasis added) (citation omitted).  Accordingly, the court concludes that the ALJ did not show good cause per *Lewis* in disregarding Dr. Mitchell's medical source opinion about Ms. Swackhamer's mental functional capacity, and the case is due to be remanded for further proceedings consistent with this memorandum opinion.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.   Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 17th day of March, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge